UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| VALERIE BODDY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 1:11-CV-123 |
| v. | ) | |
| | ) | Judge Curtis L. Collier |
| ASTEC, INC., and | ) | |
| ASTEC INDUSTRIES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## M E M O R A N D U M

Before the Court are cross-motions for summary judgment. Defendants Astec, Inc. ("Astec")

and Astec Industries, Inc. ("Astec Industries") (collectively "Defendants") move for full summary

judgment on all of Plaintiff Valerie Boddy's ("Boddy") claims under the Fair Labor Standards Act

("FLSA"), 29 U.S.C. §§ 201, *et seq*. (Court File No. 40). Boddy responded to Defendants' motion

(Court File No. 52). Boddy, for her part, moves for summary judgment only with respect to her

claim she was not compensated for overtime as required by the FLSA (Court File No. 49).

Defendants responded to Boddy's motion (Court File No. 53). For the reasons stated below, the

Court will **GRANT IN PART** and **DENY IN PART** Defendants' motion for summary judgment

(Court File No. 40): the Court will **GRANT** summary judgment for Astec Industries on all claims;

the Court will **GRANT** summary judgment for Astec on Boddy's retaliation claims; but the Court

will **DENY** summary judgment on Boddy's overtime claim. Additionally, the Court will **DENY**

Boddy's motion for partial summary judgment (Court File No. 49). These dispositions will leave

one claim standing for trial: Boddy's claim she was misclassified as "exempt" from applicable

overtime provisions of the FLSA. Boddy's second amended complaint does not demand a jury for

her overtime claim.

# I.    <u>RELEVANT FACTS</u>

Astec is a wholly-owned subsidiary of Astec Industries, and specializes in designing and manufacturing equipment used in road building and similar construction activities (Court File No. 1, ¶ 7). Although Astec is empowered to engage in operations and decisionmaking without significant interference from Astec Industries, certain policies uniformly apply to all of Astec Industries' subsidiaries. Astec makes all employment decisions without the involvement of Astec Industries, with the exception of senior management positions, but some policies such as the Code of Conduct and Ethics apply across all subsidiaries (Court File No. 40-2, Dec. Brooks, p. 1).

In 2005, the position of "General Accountant" at Astec was vacated when Lori McMahan was promoted to Controller (Court File No. 40-3, Dec. McMahan, p. 2). McMahan produced a job description of her position, which included the duties and responsibilities of a general accountant:

- Compiles and analyzes financial information to prepare entries to accounts, such as general ledger accounts, and documenting business transactions.
- Analyzes financial information detailing assets, liabilities, and capital and prepares balance sheet, profit and loss statement, and other reports to summarize and interpret current and projected company financial position for other managers.
- Audits contracts, orders, and vouchers and prepares reports to substantiate individual transactions prior to settlement.
- Installs, modifies, documents, and coordinates implementation of accounting systems and accounting control procedures.
- Devises and implements system for general accounting.
- Makes recommendations regarding the account of reserves, assets, and expenditures.
- Conducts studies and submits recommendations for improving the organization's accounting operation.
- Collects appropriate data and prepares federal, state, and local reports and tax returns.
- Follows company policies and procedures at all times.
- Follows proper safety rules and procedures at all times.
- Performs other duties as assigned.

(Court File No. 40-5, Ex. 6). Campbell Brooks, Director of Human Resources at Astec, reviewed

2

the job description and concluded it was exempt from the overtime provisions of the FLSA.

In September 2005, Boddy was hired as a "Senior General Accountant" (Court File No. 40-3, Dec. McMahan, p. 2). Boddy has a bachelor's and a master's degree in accounting from the University of Tennessee at Chattanooga but has never passed the Certified Public Accountant ("CPA") examination (Court File No. 40-5, Boddy Dep., pp. 20-22). The Senior General Accountant position was the same in duties as a General Accountant, but the title was changed because McMahan "needed someone with a little bit stronger knowledge than just a general accountant" (Court File No. 40-4, McMahan Dep., p. 50).

Boddy reported to McMahan during her time at Astec. She performed accounting functions on Astec's general ledger, which included verifying whether transactions on the general ledger were "legitimate transactions" (Court File No. 46-1, McMahan Dep., p. 53). After Boddy verified the transactions, she would create a journal entry recording the depreciation (*id.* at p. 61). This duty involved basic data entry: moving one number from one page to another (*id.*). Boddy also audited transactions to ensure they were properly posted to their appropriate accounts in the journal, which involved randomly sampling entries (*id.* at p. 63). Much of Boddy's time was apparently spent double-checking entries made by other individuals and looking for improper variations that might suggest a mistake had been made at an earlier point in the data entry. McMahan described some of Boddy's duties as "double-check[ing] your kid's homework" (*id.* at p. 79).

Boddy performed some duties beyond data entry. She was responsible for verifying sales tax was calculated properly in the sales-and-use tax return for transactions in Louisiana (*id.* at p. 101). Software used by Defendants would calculate the tax, but she would perform an audit to ensure the software made no mistakes (*id.* at p. 102). Additionally, Boddy would review budgets

submitted by other departments, and could inquire as to inconsistencies or odd portions of the budget, but she did not have the authority to do more than seek clarification (*id.* at p. 96). Boddy could reclassify expenditures to capital assets but it would require McMahan's approval (*Id.* at p. 142). She did not have discretion to classify whether an item was an expense or fixed asset (*id.* at p. 71). Boddy was also "Sarbanes-Oxley Coordinator" ("SOX Coordinator"), which involved ensuring that each account receivable matched with an actual customer and that bills of lading were attached to invoices (*id.* at pp. 39-41). She would make sure cash disbursements were signed by managers and would perform records retention (*id.* at pp. 25, 42, 43).

During the course of her employment, Boddy was expected to work later than 5:00 p.m. if necessary, and would take work home on the weekends and at night (Court File No. 46-2, Boddy Dep., p. 92, 95), (Court File No. 52-3, McMahan Dep., p. 150). Her starting salary was $45,000 a year and increased during her employment (Court File No. 40-2, Dec. Brooks, Ex. A). On May 11, 2011, Boddy filed a complaint with this court alleging she was misclassified as an exempt employee and not compensated for overtime.

On May 17, 2011, Boddy applied for the position of Assistant Controller (Court File No. 46-1, McMahan Dep., p. 191). McMahan created the position because she wanted to focus on management decisions rather than "grunt work"(*id.* at p. 140). McMahan does not have a license as a CPA, but she included a CPA license preference for the new position. Although McMahan was aware Boddy desired the position (*id.* at p. 190), Brian Peaden ("Peaden") from another Astec Industries subsidiary was hired for the position. McMahan explained she did not hire Boddy for the position because she was not qualified. McMahan stated she "asked her to–to go above and beyond her normal duties to try to learn all of the accounting . . . . To venture outside of just her area of the

general ledger and to learn payroll and to learn [Accounts Payable], to learn [Accounts Receivable], to learn the cost system" (*id.* at p. 196). According to McMahan, Boddy "never made any attempt" (*id.*). McMahan also expressed concerns about Boddy's performance, including accounting errors (Court File No. 40-4, McMahan Dep., pp. 201, 205). McMahan also noted Boddy's SOX documentation was significantly late at one point (*id.* at p. 207). David Silvious, Robin Leffew, and McMahan, Astec management officials who selected the Assistant Controller, also described a substandard interview with Boddy, while Peaden apparently did quite well during his interview (Court File Nos. 42, 44, 45). Although Peaden did not have an active CPA license, he had previously obtained a license, and the interviewers believed he displayed the knowledge level they desired for the position.

After Boddy was passed over for the Assistant Controller position, she filed an amended complaint alleging retaliation for her initial claim of misclassification (Court File No. 15). During discovery for this case, Astec learned Boddy kept a personal external hard drive at her home containing work files. Boddy claims she kept this hard drive to prevent losing her work, as Astec did not regularly back up employee computers (Court File No. 40-5, Boddy Dep., pp. 108-09). She claims she merely backed up her C: Drive everyday so she would be able to access documents from home or recover documents if her computer crashed and the documents were lost (Court File No. 52-1, 2d Boddy Dep., pp. 215-19). When this hard drive was discovered by Defendants, they reviewed the information Boddy was storing. Defendants claim the information was expansive and meticulously organized over a period of four years, including files no longer on Plaintiff's C: Drive (Court File Nos. 40-2, 40-3, Decs. Brooks, McMahan). Defendants contend the information located on Boddy's hard drive was confidential, but Boddy disputes this point.

Boddy and McMahan disagree whether McMahan permitted Boddy to maintain the backup system. Boddy claims she explicitly obtained permission to backup her work, using a thumb drive or external hard drive (Court File No. 52-8, Dec. Boddy), but McMahan claims she never gave Boddy permission to permanently retain information at her home or temporarily take home the type of information found on Boddy's hard drive (Court File No. 40-3, Dec. McMahan). She does, however, admit she permitted Boddy to complete work at home, although she required all documents be returned to the shared drive the next day (*id.*). Moreover, employees were generally allowed to take work home (Court File No. 52-10, Motion Hearing, pp. 16-17). The company did not have an official policy prohibiting document retention like this (Court File No. 52-11, 2d McMahan Dep., pp. 258-59).

After placing Boddy on paid administrative leave following discovery of her hard drive, McMahan decided to terminate Boddy's employment. Defendants claim the decision to fire Boddy was based on the retention of confidential documents over many years. Boddy, on the other hand, amended her complaint to add a claim of retaliation based on her termination (Court File No. 21). After Boddy filed her second amended complaint, Defendants moved for summary judgment (Court File No. 40). Boddy responded to this motion (Court File No. 52), and Defendants replied to Boddy's response (Court File No. 55). Boddy filed her own motion for partial summary judgment on her overtime claim (Court File No. 46). Defendants responded to this motion (Court File No. 53), and Boddy replied to Defendant's response (Court File No. 56).

## II.     <u>STANDARD OF REVIEW</u>

Summary judgment is proper when "the movant shows that there is no genuine dispute as

6

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based merely on its allegations; it must submit significant probative evidence to support its claims. *See Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Should the non-movant fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should enter summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III.   ANALYSIS

Boddy claims Defendants committed four violations of the FLSA. First, Boddy claims she was misclassified as exempt from the FLSA's overtime requirements. Second, Boddy claims Defendants retaliated against her for filing a FLSA complaint when they failed to promote her to Assistant Controller. Third, she claims Defendants retaliated against her when they terminated her

employment. Finally, Boddy claims Defendants violated the FLSA's recordkeeping requirements. Defendants moved for summary judgment on all four claims, but Boddy only seeks summary judgment on the overtime claim. The Court will consider each claim in turn.

## A. Astec and Astec Industries

Before the Court considers the merits of Boddy's claims, it must first conclude whether Astec Industries is a proper defendant in this case. Boddy asserts her claims against Astec and Astec Industries collectively, and does not differentiate between them or the roles they played in her alleged misclassification or the alleged retaliation for her FLSA claim (Court File No. 21). Defendants, on the other hand, claim Astec Industries was not Boddy's employer, as that term is defined by the FLSA.

There are multiple doctrines by which a defendant who does not directly employ a plaintiff can still be considered an employer. *Swallows v. Barnes & Noble Book Stores*, 128 F.3d 990, 993 (6th Cir. 1997); *see also Pipkins v. Service Corp. Intern.*, No. 1:06-CV-201, 2008 WL 1869737 (E.D. Tenn. April 24, 2008). In the approach Boddy relies on, "courts examine whether two entities are so interrelated that they may be considered a 'single employer' or an 'integrated enterprise.'" *Id.* (citing *York v. Tennessee Crushed Stone Ass'n*, 684 F.2d 360 (6th Cir. 1982)). The single employer test requires courts to examine four factors: "(1) interrelation of operations, i.e., common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control." *Id.* at 994; *see Armbruster v. Quinn*, 711 F.2d 1332, 1338 (6th Cir. 1983) *abrogated on other grounds Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006). "None of these factors is conclusive, and all four need not be met in every case." *Swallows*, 128

8

F.3d at 994; *Armbruster*, 711 F.2d at 1337. However, "control over labor relations is a central concern" in the integrated enterprise analysis. *Swallows*, 128 F.3d at 994.

Regarding the first factor, it is undisputed the entities do not share offices, bank accounts, or equipment. Astec reports some information to Astec Industries, but the entities maintain separate records (Court File No. 42, Dec. Silvious). Astec Industries produces some Standard Operating Procedures ("SOPs") used by employees at Astec and certain other policies such as the Code of Conduct and Ethics (Court File No. 43, Dec. Brooks). However, Astec has autonomy with respect to its day-to-day operations. There is no evidence of "the type of interrelation found in cases treating two entities as a single employer." *Swallows*, 128 F.3d at 994 (citing *Armbruster*, 711 F.2d at 1338 (finding interrelation where parent company engaged in significant day-to-day operations of subsidiary)). Similarly, with respect to the second factor, there is no evidence of common management. Astec is a wholly-owned subsidiary of Astec Industries, but has its own management officers. Boddy has presented no evidence to suggest the kind of common management that supports an integrated employer finding. *See Swallows*, 128 F.3d at 994-95 (citing *Armbruster*, 711 F.2d at 1339 (finding integrated enterprise where president of one company was director and officer of the other); *McKenzie v. Davenport-Harris Funeral Home*, 843 F.2d 930 (11th Cir. 1987) (finding integrated enterprise where companies shared a president). The fourth factor is also not met here because "[i]f neither of the entities is a sham, then the fourth test is not met." *Swallows*, 128 F.3d at 995. Boddy has presented no evidence to suggest Astec or Astec Industries is a sham. Although Boddy is not the moving party, the non-movant must submit significant probative evidence to support its claims. *See Celotex*, 477 U.S. at 324. Boddy has failed to do so on this issue.

Boddy does not dispute the factors in general weigh against a finding of integrated employer

status here (Court File No. 52, Pl. Resp. Mot. Summ. J., p. 24) ("The state of the two companies' shared bank accounts, common offices, common financial control, or offices is irrelevant when Astec has explicitly assigned decision-making responsibilities to Astec Industries, Inc's executives."). Instead, Boddy relies on the explicit decisionmaking authority afforded to Astec Industries's officials in filling the position of Assistant Controller. That is, Boddy appears to conclude Astec Industries is sufficiently involved in this case because it was part of the decision not to promote Boddy to Assistant Controller, which she argues was a retaliatory response for filing the underlying claim. However, the retaliation provisions of the FLSA do not apply to non-employers. *See Dellinger v. Science Applications Intern. Corp.*, 649 F.3d 226, 228 (4th Cir. 2011) ("[B]y using the term 'employee' in the anti-retaliation provision [29 U.S.C. § 216(b)], Congress was referring to the employer-employee relationship, the regulation of which underlies the Act as a whole, and was therefore providing protection to those in an employment relationship with their employer."). Therefore Astec Industries' involvement in Boddy's interview for Assistant Controller is irrelevant for the purposes of the FLSA if it does not otherwise qualify as her employer.

Because Astec Industries cannot retaliate against a non-employee, Astec Industries' involvement in the hiring of Astec's senior management is only relevant in this case to the extent it is evidence of "centralized control of labor relations and personnel." *Swallows*, 128 F.3d at 994. Astec Industries was involved in the selection of Astec's senior management, which is a factor that weighs in favor of integrated employer status. *Armbruster*, 711 F.2d at 1338. However, "[t]o satisfy the control prong, a parent must control the day-to-day employment decisions of the subsidiary." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1363 (10th Cir. 1993). Of particular importance is which entity engaged in the prohibited practice against the complaining party. *See id.* ("The critical

question is, '[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?'") (quoting *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983)); *see also Swallows*, 128 F.3d at 995 (citing this provision of *U.S. West*). Here, there is no evidence Astec Industries was involved in employment decisions with respect to Boddy's position as Senior General Accountant, including the alleged misclassification. Accordingly, there is insufficient evidence of the sort of centralized control of labor relations and personnel that weighs in favor of finding Astec and Astec Industries integrated. *Swallows*, 128 F.3d at 995 ("At most, the evidence shows that TTU had a voice in certain employment decisions at Barnes & Noble, not that it controlled decision in the manner seen in single employer situations.") (citing *Armbruster*, 711 F.2d at 1338-39 (finding sufficient centralized control where parent hired subsidiary's management, approved the plaintiff's hiring, and was involved in her termination)).

The Court finds integrated employer status is inappropriate in this case. Therefore the Court **GRANTS** Defendants' motion for summary judgment on all claims in favor of Astec Industries and **DENIES** Boddy's motion for summary judgment on her overtime claim with respect to Astec Industries.

### B. Overtime

The FLSA requires an employer to pay its employees for all hours worked, with pay at the rate of time-and-a-half for all hours over 40 in a work week, 29 U.S.C. § 206, unless the employee is exempt from these requirements under 29 U.S.C. § 213(a). Section 213(a) exempts workers "employed in a bona fide executive, administrative, or professional capacity." The Secretary of Labor has promulgated regulations defining which employees qualify for each exemption. The exemptions are an affirmative defense. *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843,

846-47 (6th Cir. 2012). "The employer bears the burden of establishing the affirmative defense by a preponderance of the evidence, and the employer satisfies this burden only by providing 'clear and affirmative evidence that the employee meets every requirement of an exemption.'" *Id.* at 847 (quoting *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007)).

### 1. Professional Capacity

Plaintiff claims she was misclassified as exempt from the overtime provisions of the FLSA. Astec, on the other hand, argues she is exempt as a bona fide professional employee. Every exemption contains three "tests" an employer must prove: "(1) a duties test; (2) a salary-level test; and (3) a salary-basis test." *Orton*, 668 F.3d at 847. The parties do not dispute Boddy meets the salary tests. Rather, the parties dispute whether her duties satisfy the "primary duty test." The primary duty test for the "learned professional exemption" contains three elements: "(1) The employee must perform work requiring advanced knowledge; (2) The advanced knowledge must be in a field of science or learning; and (3) The advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. 541.301(a). Additionally, the "primary duty" must be "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). This generally requires an employee perform exempt work more than fifty percent of her time before she satisfies the primary duty requirement. *Id.* § 541.700(b).

Astec bears the burden of establishing Boddy's work required advanced knowledge, which is to say her work was "predominantly intellectual in character, [] which includes work requiring the consistent exercise of discretion and judgment, as distinguished from performance of routine mental, manual, mechanical or physical work." 29 C.F.R. § 541.301(b). The regulations address the FLSA's application to accountants:

> Certified public accountants generally meet the duties requirements for the learned professional exemption. In addition, many other accountants who are not certified public accountants but perform similar job duties may qualify as exempt learned professionals. However, accounting clerks, bookkeepers and other employees who normally perform a great deal of routine work generally will not qualify as exempt professionals.

*Id.* § 541.301(e)(5). Whether Boddy's duties were similar to a CPA's duties or to an accounting clerk "is at the heart of this case." *Hendricks v. J.P. Morgan Chase Bank, N.A.*, 667 F. Supp. 2d 544, 552 (D. Conn. 2009).

Astec relies almost exclusively on both the description of Boddy's position created by McMahan prior to Boddy's employment, and Boddy's description of her duties in her own resume. However, "the determination of whether an employee is exempt is an inquiry that is based on the particular facts of his employment and not general descriptions." *Ale v. Tennessee Valley Authority*, 269 F.3d 680, 689 (6th Cir. 2001) (citing *Brock v. Nat'l Health Corp.*, 667 F. Supp. 557, 565-66 (M.D. Tenn. 1987)). In this determination a court must look to the facts of employment, and disregard "resumes, position descriptions, and performance evaluations." *See id.* (affirming the magistrate judge's determination such evidence was too general and vague and the focus whether an employee satisfied the executive and administrative exemptions should be based on actual duties). Accordingly, the Court will not rely on the job description or Boddy's resume in its analysis, but will instead look to the description of Boddy's day-to-day activities. The chief question for the Court is whether Boddy's duties were similar to a CPA or were more in the vein of routine work performed by accounting clerks and bookkeepers. *Hendricks*, 677 F. Supp. 2d at 552 ("Accordingly, the court examines whether [plaintiffs] were employees who primarily 'perform[ed] similar job duties' to those of a CPA, or whether they 'normally perform[ed] a great deal of routine work.'").

13

Some evidence supports Boddy's argument her duties were not similar to work performed by a CPA, but instead were similar to duties of "accounting clerks, bookkeepers and other employees who normally perform a great deal of routine work." 29 CFR § 541.301(e)(5). For instance, in explaining why Boddy was passed over for the Assistant Controller position, McMahan, Leffew, and Silvious all concluded she was not qualified for the position. McMahan claimed Boddy never "venture[d] outside of her area of the general ledger [] to learn payroll and to learn [Accounts Payable], to learn [Accounts Receivable], to learn the cost system" (Court File No. 46-1, McMahan Dep., p. 196). Leffew and Silvious both stressed that she was not a CPA, did not know the cost system used by Astec, and was not familiar with the COGNOS software used by the accounting department (Court File Nos. 45, 42, Decs. Leffew, Silvious). Moreover, some evidence supports Boddy's content her duties involved simple data entry. (Court File No. 46-1, McMahan Dep., p. 61) ("ATTORNEY: So it's taking numbers from one page and typing them into the computer to get out a report. MCMAHAN: Yes.").

On the other hand, there is evidence Boddy analyzed financial statements and identified possible errors. In this capacity, Boddy may have relied considerably on her advanced knowledge gained by earning two degrees in accounting. McMahan's testimony suggested that, although McMahan's final approval was required, Boddy often reclassified assets on her own if she identified errors (Court File No. 46-1, McMahan Dep., p. 142) ("In her role, Valerie has the discretion to make any type of decision, like I've told her before: 'But make it a logical decision, and I will support you.'"); (*id.*) ("If she needs to–if she needs to reclass a capital expenditure from expense into an asset, she has that discretion and she can do that. She doesn't always have to have my approval."). The extent to which Boddy performed these duties according to advanced accounting knowledge

is a question of fact the Court cannot resolve on summary judgment in this case. *See Hendricks*, 677 F. Supp. 2d at 553 (finding summary judgment inappropriate where the plaintiff "testified that he was responsible for reviewing financial statements, and that he independently performed investigation of such statements if he determined that they might contain inaccuracies," but other evidence showed "a significant portion of his job involved data entry, rather than work requiring accounting knowledge"). Further, to the extent Boddy performed work requiring advanced accounting knowledge, it is unclear from the filings whether these were Boddy's primary duties, or whether they represented a minor portion of her responsibilities. *See id.* at 553-54 ("[E]ven if Hendricks applied his accounting knowledge to some extent, it is still plausible that Hendricks would not qualify for the professional exemption if a large portion of his time was spent, for example, operating a computer software program, the use of which did not require accounting knowledge.")

Accordingly, the Court disagrees with the parties there is no genuine dispute of material fact. To the contrary, although Boddy and Astec both substantially rely on McMahan's deposition testimony, the extent to which Boddy employed advanced knowledge in performance of her duties and which tasks constituted her primary duties remain very much in dispute. The Court **DENIES** Astec's motion for summary judgment on the overtime issue, and **DENIES** Boddy's motion for partial summary judgment.

## 2. Administrative Capacity

In Boddy's motion for partial summary judgment, she anticipated Astec would argue she also qualified for the administrative capacity exemption. However, in Astec's motion for summary judgment, it did not argue Boddy satisfied the administrative exemption. Rather, in its response to

15

Boddy's motion for partial summary judgment, Astec asserts Boddy does satisfy the administrative exemption, but they conclude a genuine dispute as to material fact exists with respect to the administrative exemption and does not move for summary judgment on that point.  Because the Court has already denied Boddy's motion for summary judgment, and because Astec does not move for summary judgment on the administrative exemption, the Court need not address it.

### C. Retaliation

Boddy alleges she was passed over for promotion and her employment was terminated in retaliation for filing the instant action.  FLSA retaliation claims are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Adair v. Charter Cnty. of Wayne*, 452 F.3d 482, 489-91 (6th Cir. 2006).  Under this framework, a plaintiff must first establish a *prima facie* case of retaliation by proving (1) she engaged in a protected activity; (2) her exercise of this right was known to the employer; (3) she suffered an adverse employment action; and (4) there was a causal connection between the exercise of her rights and the adverse employment action.  *See Adair*, 452 F.3d at 489.  If the plaintiff makes this showing, "the burden then shifts to the defendant to set forth a legitimate, non-[retaliatory] reason for the adverse employment action.  If the defendant carries this burden, the plaintiff must then prove by a preponderance of the evidence that the defendant's proffered reasons were not its true reasons, but merely a pretext for illegal discrimination."  *Id*. (citations omitted).

In its summary judgment memorandum, Astec does not contest the first three elements of Boddy's *prima facie* retaliation claims, but argues only the fourth element: that Boddy has not proffered sufficient proof suggesting a causal connection between her protected activity and the adverse employment actions.  "Although no one factor is dispositive in establishing a causal

connection, evidence that the defendant treated the plaintiff differently from identically situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Allen v. Michigan Dep't of Correction*, 165 F.3d 405, 413 (6th Cir. 1999). While Sixth Circuit cases are divided on whether causation can ever be shown *solely* by temporal proximity, *see Hamilton v. Starcom Mediavest Grp.*, 522 F.3d 623, 629 & nn.1–3 (6th Cir. 2008), the cases do indicate that "proximity alone generally will not suffice where the adverse action occurs more than a few months" after the protected activity, *id.* at 629.

### 1. Denied Promotion

With respect to Boddy being denied promotion, Boddy establishes a causal connection sufficient to support a *prima facie* case of retaliation. The parties have failed to provide the Court with the exact day Peaden was hired for the Assistant Controller position over Boddy. However, in Boddy's second amended complaint she claims it was August 2011, which is more than two but less than four months after she filed this action on May 11, 2011. Because the Court must construe facts in favor of Boddy, as non-movant, the Court will assume Peaden was hired on August 1, 2011, which is two months and ten days following her protected activity. That length of time has been found to be sufficient on its own to establish a *prima facie* case. *See Hamilton*, 522 F.3d at 629 ("[T]here is a consensus that proximity alone generally will not suffice where the adverse action occurs more than a few months . . . after the protected conduct."); *Asmo v. Keane, Inc.*, 471 F.3d 588, 594 (6th Cir. 2006) ("This was within two months of October 2001, when Santoro learned that Asmo was pregnant. This temporal proximity is sufficient to establish a link between Asmo's pregnancy and her termination for the purposes of a prima facie case."); *Nguyen v. City of Cleveland*, 229 F.3d 559, 566-67 (6th Cir. 2000) ("[P]revious cases that have permitted a prima facie

17

case to be made based on the proximity of time have all been short period of time, usually less than six months.") (quoting *Parnell v. West*, 114 F.3d 1188 (6th Cir. 1997) (Unpublished opinion)).

However, despite this evidence of causal connection, Astec carries its burden of articulating legitimate, non-retaliatory reasons for its decision to hire Peaden over Boddy. Astec claims it hired Peaden over Boddy because Peaden had superior qualifications for the position. Astec points the fact Peaden was a CPA, although his license had expired. Astec also notes Peaden was familiar with Astec's cost accounting system and COGNOS software. McMahan claimed to have concerns of Boddy's job performance, including concerns of her work and attendance and general attitude (Court File No. 44, Dec. McMahan).

Viewing the evidence most favorably to Boddy, she has failed to prove by a preponderance of the evidence that Astec's proffered reasons for hiring Peaden over her are pretextual. In order to show pretext, Boddy must show that (1) Astec's proffered reasons for adverse actions had no factual basis; (2) Astec's proffered reasons did not actually motivate its actions; or (3) Astec's proffered reasons were insufficient to motivate the actions. *See Adair*, 452 F.3d at 489.

Boddy first argues Astec's reasons do not have a basis in fact. She argues her performance 2010 performance review was positive and McMahan's concerns only appeared after Boddy filed this action. However, in McMahan's deposition, she detailed performance problems dating back to late 2010 and early 2011, before this action was filed. She described large accounting errors, common absences, late work, and Boddy's failure to broaden her knowledge base, which McMahan requested she do during Boddy's 2010 performance review (Court File No. 40-4, McMahan Dep, pp. 196-98; 201-208). Boddy does not dispute these mistakes and shortcomings actually occurred, but argues the change in McMahan's review of her work evidences a retaliatory motive, pointing

18

to a positive 2010 performance review. However, it is undisputed these issues arose before Boddy filed this action. McMahan's opinion of the quality of Boddy's work could not be based on retaliatory motive if her opinion was based on issues arising before Boddy engaged in protected activity. Boddy "must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001). Boddy has failed to meet this burden. Further, Boddy argues Peaden was not an internal candidate, as asserted by Astec, because hiring between Astec Industries' subsidiaries was unusual. However, whether such hiring was unusual does not dispute that such employees were considered internal by Astec. Boddy fails to establish the proferred reasons had no factual basis.

Second, Boddy argues Peaden's qualifications did not actually motivate its actions. Boddy suggests Astec should not have had listed a CPA preference for the Assistant Controller position, because McMahan herself was not a CPA, and the preference was only added to the position in an effort to prevent Boddy from qualifying for the position. However, Boddy does not present any evidence to suggest this qualification was illegitimate. To the contrary, McMahan's declaration states the CPA preference was applicable to all Controller and Assistant Controller positions among Astec Industries' subsidiaries (Court File No. 44, Dec. McMahan). That McMahan herself was not a CPA does not refute the preference was widely applicable. Indeed, Peaden was hired with an inactive CPA license, which suggests the preference was not dispositive to Astec's decision. However, Peaden's past CPA license did factor into Astec's decision to promote him to Assistant Controller. These facts are consistent with Astec's account of its decision to promote Peaden rather than Boddy, and belie Boddy's claim the CPA preference was listed to disqualify her as a candidate.

Boddy also argues Astec did not sufficiently investigate Peaden's past and check his references, because he may have been terminated from a previous employer as a result of theft. However, "[w]e do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001) (quotation omitted). Here, Boddy has failed to establish Peaden's superior qualifications did not actually motivate the decision to hire him for the position of Assistant Controller.

Finally, Boddy argues the assertion she did not understand the cost system was insufficient reason not to promote her. Boddy claims she merely informed the interviewers the cost system was not a part of her job duties. Boddy then claims it is unreasonable to expect her to understand the cost system because "[s]he was a bookkeeper pursuing a position with more responsibility for which she was well qualified." Boddy admits, then, that she was unfamiliar with the cost system. She does not dispute knowledge of the cost system was an important qualification for the position of Assistant Controller. Boddy's argument on this point fails because she concedes she was unfamiliar with the system and does not dispute the importance of the system to the duties of Assistant Controller.

Viewing the evidence in the light most favorable to Boddy, the Court finds Boddy has stated a *prima facie* case of FLSA retaliation, but she has not carried her burden of showing Astec's legitimate, non-retaliatory reasons are pretextual. Accordingly, the Court **GRANTS** summary judgment for Astec on Boddy's claim Astec retaliated against her when it did not promote her to Assistant Controller.

## 2. Termination

Boddy also argues Astec retaliated against her for filing the underlying action when it terminated her employment. However, she fails to establish a *prima facie* case of retaliation with respect to her termination. Boddy was terminated on November 18, 2011, which is a full six months after she initiated this action. Unlike the denied promotion discussed above, this time period is insufficient on its own to establish causation. *See Hamilton*, 522 F.3d at 629 ("[T]here is a consensus that proximity alone generally will not suffice where the adverse action occurs more than a few months . . . after the protected conduct."); *Nguyen v. City of Cleveland*, 229 F.3d 559, 566-67 (6th Cir. 2000) ("[P]revious cases that have permitted a prima facie case to be made based on the proximity of time have all been short period of time, usually less than six months.") (quoting *Parnell v. West*, 114 F.3d 1188 (6th Cir. 1997) (Unpublished opinion)). In her reply to Astec's motion for summary judgment, Boddy argues her termination followed her deposition in this case by only a month, which is sufficient temporal proximity to establish a *prima facie* case. However, she failed to raise this issue in her complaint, instead basing her retaliation claim on the filing of the underlying action rather than her deposition. Accordingly, the Court will not consider Boddy's new argument. *See Bassiouni v. Central Intelligence Agency*, No. 02-C-4049, 2004 WL 1125919, at *8 (N.D. Ill Mar. 31, 2004) ("A plaintiff cannot create a genuine issue of material fact, thereby precluding summary judgment, by raising facts for the first time in response to defendant's motion for summary judgment which were not raised in the complaint."); *Bass v. Hendrix*, 931 F. Supp. 523, 538 (S.D. Tex. 1996) ("Bass, however, did not plead negligent misrepresentation in her first amended complaint. Now, she may not rely on a new claim, raised only in her response, to defeat IRT's motion for summary judgment.").

Further, to the extent Boddy argues similarly situated employees were not terminated for similar activity, she fails to provide sufficient evidence to support this. When considering whether similarly situated employees were treated differently from a plaintiff, the Court looks to whether the plaintiff has established similarity "in all relevant respects." *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 522 (6th Cir. 2008). Boddy points to testimony of Daniel Moncrief, Astec Industries' corporate manager of technical services, who testified employees were allowed to take work home with them, sometimes by downloading files onto their computer or carrying a laptop, thumb drive, or external hard drive (Court File No. 52-10, Motion Hearing p.16-17). However, Boddy points to no evidence suggesting other employees maintained external hard drives at their homes, retained significant amounts of data for any period of time, or catalogued data over many years in the manner she did. Boddy has failed to identify "identically situated employees" and has not established causation. *Allen*, 165 F.3d at 413.

Viewing the evidence in the light most favorable to Boddy, the Court finds Boddy has failed to state a *prima facie* case of FLSA retaliation. Accordingly, the Court **GRANTS** summary judgment for Astec on Boddy's claim Astec retaliated against her when it terminated her employment.

### D. Recordkeeping

Astec also moved for summary judgment on Boddy's claim Astec failed to maintain accurate and sufficient records. Astec is correct that "[the FLSA] does not authorize employee suits for violations of the FLSA's recordkeeping requirements. Authority to enforce the Act's recordkeeping provisions is vested exclusively in the Secretary of Labor." *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 843 (6th Cir. 2002). However, Boddy does not list the recordkeeping issue

22

as a count, but merely as a factual allegation. This is consistent with Boddy's contention she merely asserted the recordkeeping issue for the purpose of computing damages. *See Chao v. First Nat. Lending Corp.*, 516 F. Supp. 2d 895, 901 (N.D. Ohio 2006) ("When an employer fails to maintain records of hours worked as required by the FLSA, it is the employer's burden to refute the Plaintiffs estimate of hours worked when calculating back pay awards.") (citing *U.S. Dep't of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775, (6th Cir. 1995)). To the extent Astec seeks summary judgment on the issue of computing damages, that motion is **DENIED**.

IV. <u>**CONCLUSION**</u>

For the above reasons, the Court will **GRANT IN PART** and **DENY IN PART** Defendants' motion for summary judgment (Court File No. 40): the Court will **GRANT** summary judgment in Astec Industries' favor on all claims; will **GRANT** summary judgment for Astec on Boddy's retaliation claims; but will **DENY** summary judgment on Boddy's overtime claim. Additionally, the Court will **DENY** Boddy's motion for partial summary judgment (Court File No. 49). The overtime issue will proceed to trial. Boddy's second amended complaint does not demand a jury for her overtime claim. Hence, this case is proceeding solely towards a bench trial.

**An Order shall enter.**

**/s/** _____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

23